**In re MALLINCKRODT, INC. & Mallinckrodt Baker, Inc.**

No. 09–08–227 CV.

Court of Appeals of Texas, Beaumont.

Submitted June 26, 2008.

Decided Aug. 14, 2008.

---

Boyd S. Hoekel, Manuel Lopez, Shook, Hardy & Bacon, L.L.P., Houston, for relators.

Darren L. Brown, J. Keith Hyde, Provost Umphrey Law Firm, LLP, Beaumont, for real party in interest.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

PER CURIAM.

This discovery dispute arises from a lawsuit brought by Paul Strother's estate ("Strother") against Paul's employers and their suppliers of benzene-containing products. We conditionally grant the writ of mandamus sought by relators.

### Background

According to Strother's Original Petition, filed in March 2007, Paul worked as a laboratory technician for four different employers between 1943 and 1983. Paul developed non-Hodgkin's lymphoma, which allegedly led to Paul's death on August 3, 2006.

On April 10, 2008, Strother served notices of depositions requesting that two of the defendants, Mallinckrodt, Inc. and Mallinckrodt Baker, Inc., produce corporate representatives for depositions on May 13 and 14, 2008. *See generally* Tex.R. Civ. P. 199.2(b)(1). With respect to the persons that Strother desired to depose, the notice of deposition served on Mallinckrodt Baker, Inc., for example, requested that it designate representatives who were most knowledgeable about (1) "the supplies of benzene to J.T. Baker Chemical during the period of 1945–1989[;]" (2) "J.T. Baker Chemical's sales and deliveries of benzene" to three of Strother's employers and to six other corporations "during the period of 1945–1985[;]" (3) "J.T. Baker's manufacturing and/or purifying operations and locations of same[;]" (4) "J.T. Baker's warnings, instructions, technical information and MSDS referring or relating to benzene used by or provided to J.T. Baker Chemical Company during the period of 1945–1985[;]" and, (5) "industrial hygiene and safety policies and practices relating to benzene made or used by J.T. Baker Chemical Company during the period of 1945–1985."

Strother's notices also included requests for production of documents and asked that Mallinckrodt, Inc. and Mallinckrodt Baker, Inc. produce eighteen categories of

documents. *See generally* TEX.R. CIV. P. 199.2(b)(5). The requests to produce included, in part, a request for:

. . . .

4. All documents sales records relating to benzene reflecting sales by this Defendant to any of the companies named as Defendants in this lawsuit during the period of 1945–1985[;]

5. All warnings, labels and MSDS relating to benzene made or used by this Defendant, its employees, consultants, or suppliers during the period above[;]

6. All studies and documents relating to or referring to hazards of benzene conducted by or at the request of or funded by this Defendant[;]

7. All technical documents for benzene and benzene-containing products, including but not limited to, product bulletins, technical data sheets and product specifications used and/or written by defendant . . . during the period 1945–1985[;]

. . . .

9. All documents written, in whole or part, by the deponent which refer or relate to benzene[;]

. . . .

11. All purchase orders, invoices, sales receipts, bills of lading, contracts, computer disks and printouts, microfiche, electronic information, and other documents or records demonstrating purchases of benzene by this Defendant or it[s] predecessor from any and all suppliers during the period of 1945–1985[;]

12. All lists of all benzene products sold by this Defendant or its predecessor during the period of 1945–1985 demonstrating the trade name of all said products and the benzene concentrations of each said product[;]

. . . .

14. All documents demonstrating any and/or all of the suppliers of benzene to this Defendant during the period of 1945–1985[;]

. . . .

17. All publications, reports, memoranda, documents and ESI referring to or relating to ongoing or completed studies and research participated in or funded in whole or part by each Defendant, its agents, representatives, employees and its consultants or contractors, on behalf of said Defendant, within the last thirty (30) years which relate to or refer to the associat[ion] or lack of an association between benzene and [non-Hodgkin's lymphoma; and]

18. All publications, reports, memoranda, documents and ESI referring to or relating to ongoing or completed studies or research participated in, or funded in whole or part by Defendant, its agents, representatives, employees and its consultants or contractors[,] on behalf of said Defendant, within the last thirty (30) years which relate to exposure modeling or testing of benzene concentrations in air.

On April 15, 2008, Mallinckrodt, Inc. and Mallinckrodt Baker, Inc. (collectively "Mallinckrodt") filed a joint motion to quash the notices. Mallinckrodt's motion advanced the following four reasons to quash the depositions. First, Mallinckrodt asserted that Paul's affidavit did not identify J.T. Baker, Inc., J.T. Baker Chemical Company, or Mallinckrodt Baker, Inc. as suppliers of benzene at the labs where Paul had worked. Second, Mallinckrodt argued that the notices "with subpoenas duces tecum are impermissibly overbroad because Plaintiff has not identified any specific products of Mallinckrodt[,] Inc. which Paul Strother ('Strother') allegedly worked with." Third, according to Mallinckrodt, the notices "with subpoenas duces tecum are simply a fishing expedition of the type specifically forbidden by

the Texas Supreme Court." Finally, Mallinckrodt objected to the date and location that Strother's attorney had chosen for the depositions.

On April 29, 2008, the trial court considered the attorneys' arguments during a non-evidentiary hearing. Following the hearing, the trial court entered an order[1] that briefly delayed the proposed date of the scheduled depositions; otherwise, the trial court ordered the depositions to take place as noticed on or before May 23, 2008. The trial court's order also recites that "the Motion to Quash is otherwise unmeritorious[,]" and concluded: "The Court DENIES the Motion to Quash in all ways not specifically granted herein."

On May 2, 2008, Strother filed its first amended notices to depose Mallinckrodt's designated representatives on May 22 and 23. In all other respects, Strother's amended notices requested the same information and documents as had been requested in its initial notices. On May 9, 2008, Mallinckrodt sought relief through a writ of mandamus.

In its petition requesting mandamus relief, Mallinckrodt asserts the trial court abused its discretion in two ways. First, before allowing discovery, Mallinckrodt asserts that Strother should provide "adequate evidence identifying the source of the alleged toxic exposure." Second, Mallinckrodt asserts that the notices' document requests are overly broad. In response, Strother contends that its petition constitutes sufficient evidence of Paul's exposure to meet its threshold evidentiary burden of showing that the requested documents were relevant to its claims. Strother further contends that the re-quested documents were "tailored to the time period and circumstances of [Paul's] alleged exposure, and that is all that is required."

### Mandamus and Discovery Standards

■ For discovery matters, mandamus relief is generally appropriate only if a trial court abuses its discretion and the party resisting the discovery has no adequate appellate remedy. *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex.1996) (orig.proceeding); *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). A trial court clearly abuses its discretion when an action is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker,* 827 S.W.2d at 839.

■ Generally, the trial court has discretion to control the scope of discovery for the cases over which it presides. *See Dillard Dep't Stores, Inc. v. Hall,* 909 S.W.2d 491, 492 (Tex.1995)(per curiam). However, its discretion is not unlimited, as the trial court is obligated to make an effort to impose reasonable discovery limits. *In re Am. Optical Corp.,* 988 S.W.2d 711, 713 (Tex.1998) (per curiam). For example, ordering discovery that exceeds "that permitted by the rules of procedure" constitutes an abuse of discretion. *Texaco, Inc. v. Sanderson,* 898 S.W.2d 813, 815 (Tex.1995) (per curiam).

■ On multiple occasions the Texas Supreme Court has prohibited discovery that it has characterized as constituting a fishing expedition. *K Mart Corp. v. Sanderson,* 937 S.W.2d 429, 431 (Tex.1996) (per curiam); *Dillard Dep't Stores, Inc.,* 909

---

**1.** The order is misdated, as Judge Wortham's order states that it was signed on August 29, 2008, a date that has not yet occurred. The record reflects that the hearing occurred on April 29, 2008, and the document contains a file stamp from the clerk's office of April 29, 2008. For purposes of this proceeding, we assume that Judge Wortham signed the order on April 29.

S.W.2d at 492; *Texaco,* 898 S.W.2d at 815. The Texas Supreme Court also requires that requests to produce be tailored to include only matters relevant to the case. *In re Am. Optical Corp.,* 988 S.W.2d at 713. Moreover, the Texas Supreme Court has criticized discovery orders "requiring document production from an unreasonably long time period or from distant and unrelated locales" as impermissibly overbroad and held that such requests are subject to correction by mandamus. *In re CSX Corp.,* 124 S.W.3d 149, 152–53 (Tex. 2003) (per curiam). Recently, the Texas Supreme Court reiterated: "[T]rial courts 'must make an effort to impose reasonable discovery limits.'" *In re Allstate County Mut. Ins. Co.,* 227 S.W.3d 667, 668 (Tex. 2007) (per curiam) (quoting *In re CSX Corp.,* 124 S.W.3d at 152).

■ Before a court can order production based on discovery requests that cover multiple decades, the discovery proponent must make a threshold evidentiary showing to demonstrate the relevance of the requested documents. *See In re Dana Corp.,* 138 S.W.3d 298, 301 (Tex.2004) (per curiam) ("[O]ur rules require that a threshold showing of applicability must be made before a party can be ordered to produce multiple decades of insurance policies[.]"). In *Dana Corporation,* the discovery proponents made their threshold showing with respect to some of the requested discovery by affidavit. *Id.* The affidavits were insufficient, however, with respect to some of their other discovery requests. *Id.* at 301–02.

This court has likewise required that the proponent of discovery covering large periods of time make a threshold evidentiary showing to demonstrate how the discovery will result in the production of relevant evidence. *In re TIG Ins. Co.,* 172 S.W.3d 160, 167 (Tex.App.-Beaumont 2005, orig. proceeding). In that case, we stated: "It

is the discovery proponent's burden to demonstrate that the requested documents fall within the scope-of-discovery of Rule 192.3." *Id.* We followed the reasoning of the Texas Supreme Court in determining whether information was discoverable, namely that courts must ascertain if the information is discoverable under Rule 192.3(a)'s general scope-of-discovery test. *Id.* (quoting *In re Dana Corp.,* 138 S.W.3d at 301).

### Analysis

■ In this case, Mallinckrodt's motion to quash required the trial court to address a preliminary scope-of-discovery issue and define the universe of Mallinckrodt products for which Strother's evidence demonstrated an exposure. By defining this threshold issue, the trial court could have imposed reasonable time limits on the discovery requests and established reasonable limits to restrict discovery to the Mallinckrodt products at issue. By defining the scope-of-discovery, the trial court could have fulfilled its duty to make an effort to limit discovery to matters "relevant to the subject matter of the pending action." Tex.R. Civ. P. 192.3(a).

Strother asserts that its petition is sufficient evidence to meet its threshold discovery burden. We disagree. Based on the record before the trial court, it appears that Paul's affidavit was the only item of evidence the trial court had before it to document the nature of Paul's exposure claim. His affidavit indicates that his benzene exposure occurred between 1943 and 1983 while using benzene as a cleaner, in laboratory tests, and as a solvent. With respect to the time-periods involved and the types of products for which information was requested, Strother's document requests are broader than the scope-of-discovery identified in Paul's affidavit.

For instance, Strother's requests were not limited to products marketed for the uses reflected in Paul's affidavit; rather, the requests encompass warnings and labels for any benzene-containing product over a forty-year period. Strother's notices requesting production also ask for documents related to 1984 and 1985, which are years in which Paul's affidavit does not assert that he had any benzene exposure. As a result, because the requests cover time-periods that do not appear relevant, and cover products that were used in ways not covered by the types Paul's affidavit identifies, many of Strother's requests look very similar to those the Texas Supreme Court declared improper over a decade ago. *See Texaco*, 898 S.W.2d at 815.

Additionally, in some respects, the time frames covered by the document requests extend past the date of Paul's death. According to Paul's affidavit, his benzene exposure occurred between 1943 and 1983, and according to the allegations in the Strother's petition, he died in August 2006. Strother's attorneys informed us that at some point after the trial court's ruling, they sent a letter to Mallinckrodt offering to conform the requests to the dates of Paul's alleged benzene exposure.[2] However, Strother's notices of depositions were never amended to delete the requests that covered dates beyond those of Paul's alleged exposure.

In considering whether the trial court abused its discretion in denying Mallinckrodt's motion to quash, our review is based on the ruling that the trial court made, not a ruling that it might have made based on another request that it did not have before it. *See In re Bristol–Myers Squibb Co.*, 975 S.W.2d 601, 605 (Tex.1998) (orig.proceeding). Strother's evidence failed to show that Paul was exposed to all benzene-containing products manufactured by Mallinckrodt. Thus, because Strother's requests were not limited to the products in issue, and because the requests covered time periods when Strother's evidence did not demonstrate Paul's benzene exposure, we conclude that the requests are beyond the scope-of-discovery permissible under the evidence presented to the trial court. We further conclude that Strother's discovery requests were not narrowly tailored to Strother's claims.

When a party propounds overly broad requests, the trial court must either act to narrowly tailor the requests or sustain objections advancing the complaint that the requests are overly broad. The trial court could have more narrowly tailored Strother's requests in several ways, one of which would be by requiring that Strother sufficiently describe the product or products at issue. *See* Tex.R. Civ. P. 196.1(b) (requiring the request to describe "with reasonable particularity each item and category" requested). The court should have also considered limiting the time frames covered by the requests to make them consistent with the exposure evidence. These possibilities are not intended to be either exhaustive or exclusive, but in this case, the trial court refused to limit the breadth of the requested discovery at all.

We conclude the trial court abused its discretion by failing to limit discovery to relevant evidence and ordering discovery that was beyond that discoverable under the Rules of Civil Procedure. We decline to transfer the burden to properly draft narrowly tailored discovery to the courts and believe the better practice is to direct the trial court to enter the ruling that it

---

**2.** The letter is not in the record, and according to the attorneys, has not been filed with the district clerk.

should have entered at the hearing. *See* TEX.R.APP. P. 52.8(c). We direct the trial court to vacate its order and enter an order quashing the notices issued within twenty days of the date of this opinion.[3] With respect to the relief granted herein, the writ will issue only if the trial court fails to act promptly in accord with this opinion.

WRIT CONDITIONALLY GRANTED.

---

**3.** Our granting conditional relief would not prohibit Strother from issuing additional notices more narrowly tailored to the facts of the case or prohibit Mallinckrodt from object-ing to future notices which, in turn, might require the trial court to exercise its duty to restrict discovery to the evidence relevant to the issues in this case.