In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00333-CV**

**IN RE MARIA MIRELES-POULAT**

**Original Proceeding
457th District Court of Montgomery County, Texas
Trial Cause No. 19-07-09268-CV**

**MEMORANDUM OPINION**

AXA Seguros, S.A. de C.V. ("AXA") brought a Fraudulent Transfer Act claim against twenty-four defendants, including Relator, Maria Mireles-Poulat ("Mireles"). On September 27, 2021, the trial court granted two motions to compel and ordered Mireles to produce documents responsive to requests that Mireles argues are overbroad. Additionally, Mireles complains that the trial court abused its discretion by ordering production of documents related to her obtaining a permanent resident card ("green card"). Further, Mireles argues the trial court abused its discretion by requiring Mireles, in her responses to requests for production, to

explain in writing what happened to any lost document. She contends she has no adequate remedy by appeal. We agree, and conditionally grant mandamus relief.

AXA's Fourth Amended Petition alleges that Samy Ibrahim Hakim ("Ibrahim") owned, in whole or in part, a Mexican company, Pargroup Consultaria, S.C. ("Pargroup"). AXA alleges that Ibrahim obtained a $15.5 million loan for Pargroup by forging the valuation of real estate in Mexico provided as collateral for the loan. AXA alleges that, with the intent to impair AXA's future ability to collect from him, Ibrahim transferred all the real estate he owned in Texas to his then-wife Mireles for no apparent consideration approximately one week before AXA granted the loan. The real property transferred from Ibrahim to Mireles consists of a residence (the "Home") and a vacant lot (the "Texas Lot") located in Montgomery County, Texas. AXA also alleges that in May 2018, Ibrahim transferred approximately $1 million in cash and the value of a life insurance policy to or for the benefit of Mireles with no apparent consideration. AXA alleges Ibrahim and Mireles are Texas residents. AXA alleges that in March 2016, Ibrahim transferred the Home and the Texas Lot to Mireles for no apparent consideration, and that on May 29, 2018, they signed a partition agreement that confirmed they were married, that the Home and the Texas Lot were community property, and that Mireles was the sole owner of the property effective the date they signed the partition agreement. According to AXA, in May 2018 the Pargroup loan was in default and Ibrahim

2

violated the loan agreement by transferring the property. AXA alleges that after Mireles was served in this action, Mireles assisted in the concealment of assets and information by failing to disclose them to AXA. AXA asserts a claim against Mireles under the Fraudulent Transfer Act alleging that Ibrahim's alleged transfer to Mireles of (1) the Home and Texas Lot, (2) $68,000 funding Mireles's life insurance policy, (3) to the extent Mireles is a beneficiary, $49,000 expended to fund Ibrahim's life insurance policy and $150,000 for the policy's cash value, and (4) $1 million in cash transferred from Ibrahim to Mireles in May 2018, constituted fraudulent transfers.

On June 18, 2021, a hearing was held on Mireles's motion to modify the prior temporary injunction. Mireles testified that the temporary injunction prevented her from selling her property. Mireles stated that she married Ibrahim in 2002, they purchased the Home in 2009, and moved there with their children in May 2011, where they lived continuously until they separated in 2014, and she and the children still reside in the Home. Mireles testified Ibrahim agreed to deed the Home and Texas Lot to her as a divorce settlement in 2014, but he did not sign the deeds until March 2016. Mireles claimed she had no knowledge of the AXA loan. The United States government issued Mireles a green card in September 2016, and in 2017, her Texas driver's license identified the Home as her address. Mireles claimed Ibrahim executed correction deeds in 2018 because she wanted to clarify that she held the properties in her sole name and not as joint property with Ibrahim. In 2019, Mireles

and Ibrahim finalized their divorce in a Mexican court. A divorce settlement submitted to the Mexican court stated Mireles was domiciled in Mexico, but the address listed was her brother's house. Mireles claimed the divorce decree did not mention the Home and the Texas Lot because Ibrahim had already conveyed the properties to her through their partition agreement. Mireles received $500,000 in the divorce. Mireles filed a designation of homestead on the Home in December 2019.

On September 27, 2021, the trial court signed an order that stated in part:

> Defendant Mireles shall produce within seven calendar days of the date of this Order any documents, records, tangible things, and/or information in her possession, custody, or control that is responsive to Plaintiff's Request for Production Nos. 1 – 11.[1] Defendant Mireles's objections to Request for Production Nos. 7 and 8 are overruled.

---

[1]The Requests required that Mireles produce: (1) "All Documents, Communications and Things Concerning the Loan Agreement[;]" (2) "All Documents, Communications and Things Concerning any valuation of the Lot, including (a) the True Valuation; (b) the Forged Valuation; and (c) any other formal or informal valuation or assessment of the Lot[;]" (3) "All Documents, Communications and Things Concerning the List of Assets and Liabilities, including any Transaction involving of the assets and liabilities in the List of Assets and Liabilities[;]" (4) "All Documents, Communications and Things Concerning the Samy Ibrahim Companies, including any Transaction involving the shares in the Samy Ibrahim Companies or the assets of the Samy Ibrahim Companies[;]" (5) "All Documents, Communications and Things Concerning any actual, planned or purported efforts or actions to build any houses or structures in the Lot[;]" (6) "All Documents, Communications and Things Concerning any actual, planned or purported efforts or actions to conduct any Transaction in connection with the Lot[;]" (7) All Documents, Communications and Things Concerning the use or disposition of any funds disbursed by AXA to Pargroup and/or Mr. Samy Ibrahim in connection with the Loan Agreement[;]" (8) "All Documents, Communications and Things Concerning the [Home] and [the Texas Lot] Properties, including any Transactions involving the [Home] and [Texas Lot] Properties[;]" (9) "All Documents, Communications and Things Concerning any Transaction involving the

4

If Defendant Mireles contends that she once had possession, custody, and/or control of documents, records, tangible things, and/or information responsive to Plaintiff's Request for Production Nos. 1 – 11, but that she no longer does, she is ordered to explain in a written response to the requests what responsive documents, records, tangible things, and/or information she once had, when she had it, what occurred that resulted in her losing possession, custody, and/or control of the responsive information, and who currently has possession, custody, and/or control of the responsive information.

In a separate order signed on the same day, over Mireles's objections that the requests for production were overbroad and sought patently irrelevant and duplicative documents and post-judgment discovery, the trial court ordered Mireles to produce: (1) "[a]ll documents and communications evidencing/relating to [her] immigration status in the United States of America from January 1, 2010 to Present[;]" (2) "[a]ll Documents and communications evidencing/relating to residential properties owned by [Mireles] in the United States, Mexico, or any other country[;] and (3) "[a]ll documents and communications supporting [Mireles's]

---

transfer of Mr. Samy Ibrahim's interest in real or personal property to Ms. Mireles, Mr. Ricardo Ibrahim or any other relative of Mr. Samy Ibrahim[;]" (10) "All Documents, Communications and Things Concerning the Ibrahim Texas Trust, including its formation, structure, beneficiaries, assets, liabilities and any Transactions involving the Ibrahim Texas Trust[;]" and (11) "All Documents, Communications and Things Concerning the California Property, including any Transactions involving the California Property." The references to the Lot in AXA's requests for production refer to property in Mexico securing the Pargroup loan and not to the property referred to in this Opinion as the Texas Lot.

5

lawful resident status in the United States after her separation and divorce from [Ibrahim][.]"

Generally, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action. Tex. R. Civ. P. 192.3(a). However, a party's discovery requests may not be so vague, ambiguous and overly broad as to amount to a fishing expedition. *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex. 1989) (orig. proceeding); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding). A party must produce items in actual or constructive possession by virtue of the right to obtain possession from a third party such as an agent or representative. *See* Tex. R. Civ. P. 192.7(b); *see also GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding). But requests for production cannot require a party to create documents for the sole purpose of complying with a production request. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex. 1998) (orig. proceeding). Discovery requests must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding).

Mireles complains that the trial court has ordered production so broad in scope that she cannot determine what would be responsive to AXA's requests. In particular, she complains that AXA greatly expanded terms defined in the Texas Rules of Civil Procedure and broadened her production responsibilities beyond that provided by the Rules. We agree. AXA's requests refer to Texas Rule of Civil Procedure 192.3(b) to define "Documents" but then expands the term beyond that contained in the Rule. For instance, "Document" includes any "opinion," any "thing," or any "amendments, whether contemplated or executed[.]" The discovery requests instructed Mireles that "[e]ach reference to a natural Person includes that Person's relatives, employees, partners, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing[]" and that "possession, custody, or control" of a document included "the right to obtain the Document or a copy thereof upon demand . . . from any person or public or private entity that has actual physical possession." As Mireles notes, the requests require her to produce information held by the Mexican government. They also require her to produce information her relatives have a right to obtain even if she does not. The requests for production require Mireles to describe her efforts to obtain the information requested as to any incomplete or unfiled response. Thus, the requests require Mireles to create documents that do not exist. To comply with the requests

7

for production compelled by the trial court, Mireles would have to obtain and produce documents held solely by the other defendants or by AXA and would have to create documents describing her efforts to obtain documents. This is an improper use of Rule 196, which requires production of documents in the person's possession, custody, or control. *See* Tex. R. Civ. P. 196.3(a).

The requests for production are overbroad and the trial court's order in relation thereto is an abuse of discretion. The requests because they are not limited to documents about the transactions that AXA alleges were fraudulent. For instance, Request for Production Number 3 requires Mireles to produce documents concerning a list of assets and liabilities when the list is not included in the discovery request and Mireles claims that AXA has not provided her with a copy. Further, the request is overbroad because it requires responses concerning unidentified items. The request for all information about Ibrahim's companies in Request for Production Number 4 is not limited to documents concerning the transfer of assets. As written, the request requires Mireles to respond with any document by or about any of the companies which might be in her possession or in the possession of a relative of hers. Although the lawsuit concerns specific assets allegedly transferred from Ibrahim to Mireles, Request for Production Number 8 is not limited to transactional documents but requires production of any document concerning the Home, which would include utility bills and maintenance agreements. Request for Production

Number 9 is not limited to the real and personal property AXA claims Ibrahim fraudulently transferred. Request Number 11 asks for all documents of any nature concerning the California Property and is not limited to the fraudulent transaction alleged in AXA's live pleadings.

When a party propounds overly broad requests, the trial court must either sustain the objection or act to narrowly tailor the requests. *In re Mallinckrodt, Inc.*, 262 S.W.3d 469, 474 (Tex. App.—Beaumont 2008, orig. proceeding). In this case, AXA did not confine its requests for production to the alleged fraudulent transactions and sought to freely explore for additional assets. Because the requests are so broadly written that they require production of material that could have no possible relevance regarding AXA's fraudulent transfer claim, the trial court abused its discretion by compelling production in response to overly broad discovery requests.

Mireles also argues compelling production regrading her immigration status and assets is irrelevant, overbroad, and harassing. In a separate order, the trial court compelled Mireles to respond to requests for production of documents and communications: (1) relating to Mireles's immigration status from January 1, 2010 to the present; (2) supporting Mireles's lawful resident status after her separation and divorce from Ibrahim; and (3) all documents relating to residential properties owned by Mireles in any country.

9

Mireles complains that the trial court abused its discretion by compelling her to answer AXA's request to produce "[a]ll Documents and communications evidencing/relating to residential properties owned by [Mireles] in the United States, Mexico, or any other country." Mireles objected that the request was overly broad and that information about any property other than the Home and the Texas Lot was impermissible post-judgment discovery and was not calculated to lead to the discovery of admissible evidence. AXA argues that considering Mireles's admission in the divorce proceedings her domicile is Mexico City, evidence of Mireles's ownership of other real property would be probative of whether Mireles's declared homestead "is the one that she should count as her homestead." But in this case it is undisputed that Mireles resides in the Home, as AXA alleged Mireles and Ibrahim reside at the Home and that Mireles holds the record title to the Home. "The possession and use of real estate by one who owns it, and who, with his family, resides upon it makes it the homestead of the family in law and in fact." *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Therefore, the only possible dispute is whether Mireles intended to make the property her homestead. *See id.* ("In order to establish homestead rights, the proof must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead."). AXA's request has negligible probative value regarding Mireles's assertion that the Home is her

homestead, considering AXA itself alleges that Mireles resides in the Home. AXA's request for production is overly broad because it is not limited to records that Mireles claims a homestead exemption in other property. The trial court clearly abused its discretion by ordering Mireles to respond to AXA's request for production.

AXA argues documents related to Mireles's immigration status are reasonably designed to discover relevant information about Mireles's true homestead. AXA claims that if Mireles lied to immigration officials about a fact that she would expect the government to discover, that would suggest that she did not intend to remain in the United States permanently. But Mireles's green card establishes her immigration status. *See* 8 U.S.C. § 1101(a)(20) ("The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."). Other documents relating to admission to the United States have no possible bearing on her right to designate the Home as her homestead. Discovery requests must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d at 713. The requests are overbroad because they fail to obtain necessary, pertinent information while avoiding tenuous information. *See In re CSX Corp.*, 124 S.W.3d at 153. The trial court abused its discretion by failing to either sustain the objection or act to narrowly tailor the requests. *In re Mallinckrodt, Inc.*, 262 S.W.3d at 474. Because

11

Mireles's immigration status has no bearing on either AXA's fraudulent transfer act claim or the status of the Home as Mireles's homestead, we hold the trial court clearly abused its discretion by compelling Mireles to respond to the requests for production relating to her immigration status.

Regarding AXA's requests for production for any document responsive over which she once had but no longer has possession, custody, or control, Mireles argues the trial court abused its discretion by ordering her to explain "what responsive documents, records, tangible things, and/or information she once had, when she had it, what occurred that resulted in her losing possession, custody, and/or control of the responsive information, and who currently has possession, custody, and/or control of the responsive information[.]" AXA argues the trial court ordered discovery that is permitted under Rule 192.3(a). *See* Tex. R. Civ. P. 192.3(a) ("In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party."). AXA suggests Mireles's compliance with the trial court's order might uncover evidence of spoliation, but absent an allegation that Mireles destroyed documents concerning the transactions at issue in this lawsuit, the request is merely an impermissible fishing expedition. *See In re Am. Optical Corp.*, 988 S.W.2d at 713; *Loftin v. Martin*, 776 S.W.2d at 148. The trial court compelled Mireles to

respond to requests for production under Rule 196, which prohibits requiring a party to create documents for the sole purpose of complying with a production request. *In re Colonial Pipeline Co.*, 968 S.W.2d at 942. The trial court abused its discretion by ordering Mireles to create documents responsive to AXA's requests for production.

"A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding). We conditionally grant the relief requested in Relator's petition for a writ of mandamus. We are confident that the trial court will vacate its orders of September 27, 2021. The writ of mandamus shall issue only in the event the trial court fails to comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on November 8, 2021
Opinion Delivered March 10, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.