In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00078-CV
_____

NICHOLAS MARTENY, Appellant

V.

BRENT W. COON AND BRENT W. COON, PC
D/B/A BRENT COON & ASSOCIATES, Appellees

On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-199,855

MEMORANDUM OPINION

For the second time in this legal malpractice case, Nicholas Marteny ("Marteny") appeals the trial court's grant of a traditional motion for summary judgment for Brent W. Coon and Brent W. Coon, PC d/b/a Brent Coon & Associates (collectively "BCA"). In four issues, Marteny argues: (1) the law-of-the-case doctrine precluded summary judgment because the facts and record are substantially the same as in the first summary judgment proceeding; (2) even if the law-of-the-

1

case doctrine does not apply, the trial court erred by granting traditional summary judgment based on lack of duty and damages; (3) the trial court abused its discretion by denying his Motion to Compel; and (4) the trial court abused its discretion by denying his Motion for Continuance of the summary judgment hearing to obtain discovery. We affirm for the reasons discussed below.

## I. BACKGROUND AND PROCEDURAL POSTURE

### A. Prior Appeal and Mandamus

In 2020, we reversed the trial court's grant of BCA's traditional motion for summary judgment, holding in part that BCA failed to conclusively negate the duty and damages elements of Marteny's legal malpractice claim. *See Marteny v. Coon*, No. 09-19-00019-CV, 2020 WL 5666567, at *5–6 (Tex. App.—Beaumont Sept. 24, 2020, no pet.) (mem. op.) ("*Marteny I*"). We recited the facts in *Marteny I* and have included pertinent facts here from that opinion. *See id.* at *1–3.

Following the Deepwater Horizon oil spill on April 20, 2010, the United States Department of the Interior placed a moratorium on offshore drilling. *See id.* at *1. After the oil spill and the imposition of the moratorium, Marteny, a merchant mariner, lost his job and struggled to find another due to reduced demand. *See id.*

2

Before hiring BCA, Marteny submitted his economic loss claim through the Gulf Coast Claims Facility ("GCCF").[1] *See id.*

Then, on June 10, 2011, Marteny entered into an agreement to have BCA represent him in pursuing his claims. On September 7, 2011, the GCCF denied Marteny's initial claim and advised this was because it "determined that you did not demonstrate that you lost profits or income as a direct result of the Oil Spill." The GCCF also advised that he could appeal and retained the right to file a multidistrict litigation ("MDL") claim in court. In a letter dated December 5, 2011, a BCA attorney apprised Marteny of the GCCF's initial denial and informed Marteny that BCA "inten[ded] to dispute" it. On January 20, 2012, BCA sent another demand to the GCCF on Marteny's behalf under the Oil Pollution Act of 1990 ("OPA"), which was also rejected on June 13, 2012. Marteny asserts BCA never disclosed this rejection to him.

On June 25, 2012, Marteny terminated BCA due to alleged difficulties communicating with BCA. Marteny changed his mind, and on September 11, 2012, he sent an email asking BCA to "disregard the termination letter and continue to represent [him]." Subsequently, on November 20, 2012, BCA staff asked Marteny via email to confirm his desire to cancel the termination and have BCA continue to

---

[1]The GCCF was the official claims handling program for individuals filing claims for damages related to the Deepwater Horizon Oil spill.

3

represent him under the original contract, which Marteny did the same day. On January 15, 2013, BCA filed a "Deepwater Horizon Oil Pollution Act Presentment Claim Form" on Marteny's behalf indicating that Marteny suffered $100,000 in loss of income, profits and/or earning capacity and that BCA represented him.

On April 19, 2013, BCA filed two petitions in state court on behalf of over 4,000 BP clients but did not name Marteny as a plaintiff. These petitions included plaintiffs who were "[o]il service, exploration and/or drilling service companies, workers, providers, or suppliers ... affected by the Moratorium issued by the United States Department of the Interior[.]"

In November 2015, Marteny claimed he retained another lawyer to determine the status of his BP claim. He asserted the GCCF claim had been "abandoned" and that no timely lawsuit was filed on his behalf against BP. In April 2017, Marteny sued BCA for negligence, among other things. The only cause of action at issue in this appeal is Marteny's legal malpractice claim for negligence. *See id.* at *8 (explaining that this Court affirmed the trial court's dismissal of Marteny's breach of fiduciary duty and Texas Deceptive Trade Practices Act ("TDTPA") claims, because Marteny did not challenge them in the first appeal).

BCA filed its first traditional motion for summary judgment, which we addressed in *Marteny I. See id.* at *2. BCA's first motion challenged the duty and damages elements of Marteny's cause of action. *See id.* In that motion, BCA argued:

4

(1) it did not represent Marteny after June 25, 2012, so it owed him no duty; and (2) since a federal court ruled that BP was not responsible under the OPA for economic losses resulting from the moratoria, Marteny had no damages.[2] *See id.* In *Marteny I*, we reversed and remanded concluding, in part, that "BCA failed to conclusively negate the existence of an attorney-client relationship and consequently, the duty element." *Id.* at *5. We likewise determined that BCA failed to negate the damages element, and "a genuine issue of material fact remain[ed] as to Marteny's damages and settlement value of the case." *See id.* at *6 (citations omitted).

Critical to our analysis in *Marteny I* was that "BCA did not submit any affidavits or expert testimony in support of its motion." *Id.* at *2. We explained that "BCA failed to provide *any* expert testimony on the damages element, by affidavit or otherwise." *Id.* In *Marteny I* BCA's only summary judgment evidence was: "(a) Marteny's termination letter; (b) Marteny's written discovery responses; (c) Marteny's original petition and request for disclosure; (d) MDL notice of filing of the economic and property damages settlement agreement; and (e) order and reasons "'[As to the OPA Test Cases/Moratorium Claims].'" *Id.*

*Marteny I* also addressed a written discovery dispute and Marteny's motion to compel certain settlement information for "similar clients." *See id.* We ruled on

---

[2]There were multiple drilling moratoria imposed, but BCA references a single moratorium. *See Marteny v. Coon*, No. 09-19-00019-CV, 2020 WL 5666567, at *2 n.4 (Tex. App.—Beaumont Sept. 24, 2020, no pet.) (mem. op.).

5

the discovery dispute that "Considering the deficient privilege log and BCA's failure to make a prima facie case for the applicability of the asserted privileges, we determine the trial court abused its discretion by failing to rule on Marteny's motion to compel." *See id.* at *8. On remand, we instructed the "trial court to order the production of an adequate privilege log and development of affidavit or other testimony, so that the applicability of the asserted privileges can be properly assessed by the trial court." *See id.*

After remand, Marteny petitioned for mandamus in this Court, which we denied. *See In re Marteny*, No. 09-21-00385-CV, 2022 WL 318448, at *1–2 (Tex. App.—Beaumont Feb. 3, 2022, orig. proceeding) (mem. op.) ("*Marteny II*"). The events leading to that mandamus proceeding involved BCA's amended privilege log that identified clients by an identification number and noted the general occupation type and whether the client was a merchant marine, but redacted claim submissions, settlement demand amounts, final settlement amounts, and personal identifying information for each client. *See id.* The trial court reviewed an unredacted privilege log in camera and an affidavit quoting the language from the MDL court's confidentiality order relating to the settlements about which Marteny sought to compel discovery. *See id.* The trial court then denied Marteny's motion to compel without elaboration. *See id.* In the mandamus proceeding, Marteny argued the trial court abused its discretion by denying his motion to compel written discovery of

6

settlements obtained in the BP Deepwater Horizon litigation by BCA's other clients in response to his second set of requests for production. *See id.*

BCA repeatedly complained to the trial court that Marteny's definition of "similarly situated clients" was too vague to discern which of its clients were "similar[ly] situated." *See id.* at *3. In his second set of requests for production, Marteny defined the term as

> those clients or plaintiffs [BCA] represented in claims with the GCCF, the Settlement Program, any other settlement or claim program relating to the spill, or in litigation against BP arising out of the Deepwater Horizon Oil Spill that occurred on or about April 20, 2010 and who were oil service, exploration or marine workers, providers, or suppliers that, like Marteny, claimed to suffer economic losses as a result of the oil spill or the moratorium issued by the United States Department of the Interior following the spill.

*See id.* We concluded the trial court did not abuse its discretion by denying Marteny's motion to compel given a facially overbroad discovery request. *See id.* We reasoned that the requests "required BCA to produce information about oil rig workers and persons whose occupations were not at all similar to Marteny's occupation as a small boat operator." *Id.* We also explained that Marteny's claims were "solely for moratorium damages; however, the discovery requests required BCA to produce information not only for moratorium damage claims, but also for oil spill damage claims." *Id.*

7

**B. Continued Discovery Issues After Mandamus**

On May 24, 2022, following our denial of his petition for writ of mandamus and opinion in *Marteny II*, Marteny propounded a "Third Set of Written Discovery to Defendants," which included "Plaintiff's Second Request for Admission," "Plaintiff's Third Set of Interrogatories to Coon & Associates," and "Plaintiff's Third Request for Production to Defendants." Marteny claims to have narrowed the requests to address this Court's concerns about the requests' overbreadth but the requests were identical to Marteny's previous set of discovery. Specifically, Marteny changes the definition of "similar clients" to

> clients or plaintiffs [BCA] represented in claims with the GCCF, the Settlement Program, or in litigation against BP arising out of the Deepwater Horizon Oil Spill that occurred on or about April 20, 2010 and whose occupations were similar to Marteny and claimed to suffer economic losses as a result of the moratorium issued by the United States Department of the Interior following the oil spill.

BCA failed to respond to this discovery, object, or assert any claims of privilege within thirty days.

In November 2022, Marteny emailed BCA to inquire about the status of these discovery responses. Marteny then filed his "Motion to Compel Third Set of Written Discovery and Motion to Deem Admissions" arguing that BCA waived any objections by failing to timely respond to the discovery and that the admissions were deemed admitted. Accordingly, Marteny argues that BCA admitted that it filed claims on behalf of similar clients and obtained settlements, and the trial court should

8

compel BCA to respond to the discovery and produce the settlement information. Marteny set his Motion to Compel for an oral hearing less than two weeks later.

BCA responded to the Third Set of Written Discovery the day before the hearing with answers and objections. In its Response, BCA argues the requests were "identical" to prior requests, and Plaintiffs only "made a small change to the definitions, but it does not change any answer to previous discovery requests." BCA also argues that *Elizondo v. Krist*, 415 S.W.3d 259 (Tex. 2013), does not apply, but even if it applies, it does not allow for production of privileged settlement information or information protected by a Court-ordered confidentiality provision, positions it consistently took in the trial court. Among other things, BCA contends the admissions should not be deemed because there was good cause and no undue prejudice, specifically the delay was unintentional, and there is no trial setting. BCA claims they are "gotcha admissions" sent with the hope they would not be seen, and they are "identical" to past admissions, and the responses have not changed. BCA claims the late responses are the result of mistake or accident rather than intentional or the result of conscious indifference but did not support its Response with affidavits. The day of the hearing, BCA filed "Defendant's Motion to St[r]ike Plaintiff's Motion to Compel Third Set of Written Discovery and Motion to Deem Admissions[,]" arguing the requests were "redundant to previous discovery[.]"

9

At the hearing, BCA offered to have Eric Newell, a BCA attorney, testify about BCA's lack of conscious indifference, since their Response did not include an affidavit to support it. Rather than have Newell testify, the trial court instructed Newell to submit an affidavit after the hearing, and the trial court allowed Marteny an extra day to respond to any affidavit submitted. The same day, but after the hearing, Newell, submitted an affidavit regarding the late discovery responses. The next day, Marteny filed "Plaintiff's Reply in Support of Motion to Compel Third Set of Written Discovery, Objection to the November 16, 2022 Affidavit of Eric Newell, and Response to Motion to Strike." In his Reply, Marteny objects to Newell's affidavit and complains that it is conclusory and was insufficient to establish confidentiality. He also argues BCA waived the objections and claims of privilege under Rule 193.2(e), among other things, and inadvertence of counsel is not "good cause." Marteny asserts that even if BCA did not waive its objections, the trial court should grant the Motion to Compel since the information sought is necessary to establish settlement value. Marteny claims BCA could cure any confidentiality concerns with a protective order.

On November 22, 2022, BCA submitted the "Amended Affidavit of Eric W. Newell" in support of its claims that the failure to timely respond to discovery was not based on conscious indifference. The affidavit outlines in greater detail the circumstances and misunderstandings that led to BCA not timely answering the

10

discovery. Newell explains that all settling BCA oil spill clients had contractual provisions that required confidentiality, and everything "disclosed to BP or the settlement claims administrators in the settlement process of that MDL is privileged and confidential, and the settlements themselves were sealed by Court Order." Finally, Newell states that Marteny "was the only [BCA] Oil Spill client who [pled] that his damages from the BP Deepwater Horizon Oil Spill [were] solely moratorium damages[,]" and he "answered discovery in this matter indicating [that he pled] that his damages from the BP Deepwater Horizon Oil Spill were primarily moratorium damages." Marteny objects to Newell's amended affidavit for several reasons.

The trial court did not immediately rule, but on February 8, 2023, it signed an Order denying Marteny's Motion to Compel Third Set of Written Discovery.

## C. BCA's Second Motion for Summary Judgment

On January 3, 2023, BCA filed its second traditional Motion for Summary Judgment challenging the damages and duty elements of Marteny's legal malpractice claim. In its Motion for Summary Judgment, BCA explains that in April 2012, the Plaintiff Steering Committee formed the Deepwater Horizon Economic and Property Damages Settlement ("Class Settlement"). BCA explains that the Deepwater Horizon Economic and Property Damages Claim Center ("DHECC") was created to administer claims and began accepting claims in June 2012. BCA explains in its Motion that DHECC's creation dissolved the GCCF.

11

BCA notes that in March 2016, once the DHECC began winding down, "the MDL court issued a mandate to file cases individually[,]" which would be decided by "a committee of neutrals." These neutrals settled "thousands of BCA claims and tens of thousands of other claims." BCA also describes MDL 2179's history and formation, explaining what MDL court category Marteny's claims were in.

BCA outlines the steps it took after satisfying the presentment requirements on behalf of its clients, which included "mass joinder filings" in Texas, and the Texas state court actions were ultimately transferred to MDL 2179.

BCA contends the Class Settlement excluded moratoria losses, explaining that

> the Class Settlement was supposed to allow people with moratorium claims to pursue non-moratorium losses with the DHECC and reserve moratorium losses for potential recovery outside the settlement. Instead, claimants who had any portion of their claim that was moratorium became caught in the Moratoria hold w[h]ere BP would not agree to pay any of their damages, even those with portions of their claim [] not associated with the Moratorium.

In the MDL, a small group of moratoria test cases were worked up, which BP moved to dismiss and argued that the governmental moratorium on drilling was an intervening or superseding cause.

BCA argues that if damages were not recoverable by law, Marteny could not prove an amount of damages recoverable and collectible. More specifically, BCA contends in its Motion for Summary Judgment that (1) claims solely for moratorium losses were excluded from the Class Settlement, (2) Marteny was not entitled to

recover for his moratorium losses in the tort system because the MDL court ruled that BP was not responsible under the OPA for economic loss that resulted from the moratorium, and (3) claims related to deepwater drilling were ineligible for compensation under the GCCF.

In its Motion for Summary Judgment, BCA argues that "the only recourse left for moratorium claims would lie in the tort system." The MDL court ruled that as a responsible party under the OPA, BP was not liable for a claimant's economic losses resulting from the moratorium, and "the Court determined that the imposition of the moratoria by the US Government was an intervening act that ended any causation chain otherwise extended by OPA." BCA asserts that

> pure moratorium claims su[]ch as Marteny[']s were not compensable by any program set up by BP, including both the GCCF and the DHECC. Moreover, it is clear that after significant work up and briefing purely moratorium cases were not compensable in the tort system. Therefore Mr. Marteny was not entitled to any monitory [sic] award for his losses in the . . . case. Therefore, he has no way to prove damages in this matter.

BCA attempts to distinguish *Elizondo*, noting (1) that case involved the presumption of some recovery in the underlying case, which was not present here, and (2) there, defendant sought to avoid a trial by making settlement offers in every case. In sum, BCA contends in its Motion for Summary Judgment that Marteny did not have a viable claim for moratorium related damages under the OPA, thus he could not have

suffered damages because of BCA's alleged negligence, and summary judgment was proper on the damages element.

BCA also challenges the duty element of Marteny's legal malpractice claim in its Motion for Summary Judgment. BCA argues that any legal injury occurred after it no longer represented Plaintiff, thus there was no "legal injury" to form the basis of a claim. BCA states that the attorney-client relationship between the parties ended on June 25, 2012, at Marteny's request. BCA asserts it cannot be responsible for the legal injury, if any, because it no longer owed Marteny a legal duty. After terminating the relationship, Marteny reached out again to BCA for representation, and BCA asserts it "rebuffed" this attempt.

In addition to Brent Coon's affidavit, BCA supported its motion with the following evidence: A) "Final Report by the Claims Administrator of the Deepwater Horizon Economic and Property Damages Settlement Agreement on the Status of Claims Review" dated July 31, 2018; B) MDL 2179 "Pretrial Order No. 11 [Case Management Order No. 1];" C) "Findings of Fact and Conclusions of Law Phase One Trial;" D) "Order & Reasons [As to the Motions to Dismiss the Pure Stigma, BP Dealer, and Recreation Claims];" E) "Order & Reasons [As to the Cross Motions for Summary Judgment regarding the claims by the Mexican States];" F) "Brief in Support of Transocean's Rule 12(b)(6) Motion to Dismiss the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint" (OPA

14

displaces general maritime law, and general maritime law preempts state common law; argues all moratorium claims must be dismissed given the lack of causation of the damages by the spill and that the moratorium was a superseding unforeseeable cause, and Plaintiffs may not recover as a matter of law under OPA, or any other laws, state or federal); G) "Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Bundle B1 First Amended Master Complaint, Cross-Claim, and Third-Party Complaint;" H) "Reply Brief in Support of Transocean's Rule 12(b)(6) Motion to Dismiss the First Amended B1 Master Claim in Limitation and the First Amended B1 Master Complaint" (arguing that moratorium damages were not caused by the discharge of oil as required by the OPA but caused by the moratorium); I) "BP Defendants' Reply Memorandum in Support of BP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) the First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No.1] Section III.B1 ["B1 Bundle"] and in Response to State of Louisiana's Memorandum of Law in Interest in and Opposition to Defendants' Pending Motions to Dismiss;" J) "Order and Reasons [As to Motions to Dismiss the B1 Master Complaint]" granting and denying in part; K) "*Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012;" K1) Exhibit 16 to Settlement Agreement (showing that no class member shall recover

for moratoria losses; broadly defining moratorium losses and excluding them from the class settlement); L) "Order [Regarding OPA Test Cases];" M) "Memorandum in Support of Motion to Strike Affirmative Defenses and Motion *in Limine* Regarding Potential Third-Party Fault, Including Application of any Alleged 'Superseding' Cause Defense Premised on Governmental Action or Inaction Following the Spill;" N) "BPXP's Memorandum in Opposition to the OPA Test Case Plaintiffs' Motion to Strike Affirmative Defenses and Motion *in Limine* Regarding Potential Third-Party Fault;" O) "Class Counsel's Reply Brief in Further Support of Motion to Strike Affirmative Defenses and Motion *in Limine* regarding Potential Third-Party Fault and Superseding Cause Defense;" P) "Order [Regarding the OPA Test Case Plaintiffs' Motion to Strike Affirmative Defenses and Motion *in Limine* Regarding Potential Third-Party Fault, Including Application of Any Alleged 'Superseding' Cause Defense Premised on Governmental Action or Inaction Following the Spill (Rec. Doc. 13108)];" Q) "Order [OPA Test Cases – Conference on Friday, November 13, 2015];" R) "Memorandum in Support of BPXP's Motion to Dismiss Moratoria/Permitoria Claims;" S) "BPXP's Motion to Dismiss Moratoria/Permitoria Claims;" T) "Opposition to BP's Renewed Motion to Dismiss the So-Called 'Moratoria' and 'Permitoria' Claims;" U) "Memorandum in Opposition to Plaintiffs' Renewed Motion to Strike Affirmative Defenses and Motion *in Limine* Third-Party Fault;" V) "Reply Brief in Support of Renewed

Motion to Strike;" W) "Reply Memorandum in Support of BPXP's Motion to Dismiss Moratoria/Permitoria Claims (Combined with Response to Statement of the U.S. on the OPA Test Case Pleadings-Stage Cross Motions);" X) "OPA Test Cases – Statement of the United States Relating to: (1) Plaintiffs' Motion to Strike Affirmative Defenses; and (2) BP's Motion to Dismiss Moratoria Claims;" Y) "Order & Reasons [As to the OPA Test Cases/Moratorium Claims]" (determining a responsible party under the OPA is not responsible for claimant's economic loss resulting from the drilling moratorium and granted BP's Motion to Dismiss); Z) "Notice of Appeal;" AA) "Notice of Voluntary Dismissal with Prejudice" filed by Plaintiff Construction Solutions, Inc.; BB) "Order [Regarding Claims in the Economic Settlement that are Subject to Moratoria Hold];" CC) "Order [As to the Remaining Cases in the B1 Pleading Bundle Following PTO 60, PTO 64, and the Moratorium Hold Opt-Out Order];" DD) "Order [Regarding Claims in the Economic Settlement that Are Subject to Moratoria Hold];" EE) "Order & Reasons" filed 8/5/21; FF) "Order & Reasons" filed 8/13/21; GG) "Order & Reasons" filed 8/19/21; HH) "Judgment;" II) "Order" filed 8/26/21; JJ) "Order" filed 9/1/21; KK) "Revised Order & Reasons" filed 9/7/21; LL) "Plaintiff's Objections and Answers to Defendant [BCA's] First Set of Interrogatories;" MM) "Plaintiff's Original Petition and Request for Disclosure;" and NN) Marteny's Letter Terminating BCA dated June 25, 2012.

BCA set its Motion for Summary Judgment for oral hearing to be heard on February 1, 2023.

**D. Marteny's Response to BCA's Second Motion for Summary Judgment**

On January 25, 2023, Marteny filed "Plaintiff's Objections and Response to Defendants' Motion for Summary Judgment and Alternative Motion to Continue Summary Judgment Hearing." Marteny responds that BCA's new Motion for Summary Judgment should be denied for four reasons: (1) BCA failed to negate duty, because after he terminated the firm on June 25, 2012, the parties reinstated the attorney-client relationship on November 20, 2012; (2) BCA's "bare assertions" that he would not have been compensated for his economic losses suffered even if they had acted competently do not constitute summary judgment proof; (3) although BCA attempts to negate damages through Coon's affidavit, it should be stricken for several reasons, and without it, no evidence negates damages; and (4) even if Coon's affidavit is not stricken, BCA's own evidence demonstrates that other claimants in the BP litigation who alleged economic losses due to the moratorium recovered settlements from BP, thus "there are genuine issues of material fact as to whether Plaintiff would have also recovered a settlement but for [BCA's] negligence." Marteny disputes BCA's attempt to distinguish *Elizondo* and asserts that the *Elizondo* analysis applies to this case where 1) Marteny alleges that but for BCA's negligence, he would have recovered a settlement, and 2) BP decided "to settle

18

thousands of moratoria claims even if they were not entitled to compensation." Marteny objects to Coon's affidavit for three reasons: (1) that it is incompetent and inadmissible as a matter of law under the witness-advocate rule; (2) Coon attempts to provide expert opinions without adequate disclosures; and (3) Coon's testimony is conclusory. Alternatively, Marteny moved for a continuance to "allow the necessary discovery to be obtained[,]" and attached counsel's unsigned declaration.

Marteny supported his Response with evidence, including: "Declaration of Nicholas Marteny"; "Contract & Power of Attorney" between BCA and Marteny dated June 10, 2011; "Denial Letter on Interim Payment/Final Payment Claim" from GCCF to BCA dated September 7, 2011 denying Marteny's claim; Letter from BCA to Marteny dated December 5, 2011 advising that GCCF denied his initial claim because his loss was unrelated to the Oil Spill and that BCA intended to dispute this and asking for authority to negotiate a settlement on his behalf; Letter from BCA to GCCF administrator Feinberg dated January 20, 2012 regarding "OPA Claim Presentment Demand" and making a formal demand under the OPA for damages related to the oil spill; September 11, 2012 email exchange withdrawing Marteny's termination letter and requesting that BCA continue to represent him; November 20, 2012 email from BCA to Marteny asking him to confirm that he wished to cancel the termination request and have BCA continue to represent him under their original contract; "Deepwater Horizon Oil Pollution Act Presentment Claim Form" dated

January 15, 2013 listing BCA as attorneys; "Plaintiffs' Original Petition" filed on April 19, 2013, in Jefferson County District Court naming other BCA clients but excluding Marteny; "Plaintiffs' Original Petition" filed on April 19, 2013, in Harris County District Court naming other BCA clients but excluding Marteny; Transcript from May 1, 2018 "Hearing on Defendants' [First] Motion for Summary Judgment;" Transcript from September 18, 2018 "Hearing on Plaintiff's Motion to Compel Written Discovery;" "Plaintiff's Third Set of Written Discovery to Defendants" propounded May 24, 2022 after *Marteny II* opinion; MDL "Pretrial Order No. 60 [As to All Remaining Claims in Pleading Bundle B1; Requiring B1 Plaintiffs to File a Complaint and/or Sworn Statement];" "Defendants' Objections & Response to Plaintiff[']s First Request for Disclosure;" "Defendants' First Amended Objections & Response to Plaintiff[']s First Request for Disclosure;" and unsigned "Declaration of David Eric Kassab."

At the summary judgment hearing, in addition to the parties arguing the summary judgment motion, Marteny re-urged his objections to Coon's affidavit. Marteny also addressed his requested continuance and discovery he needed on similarly situated clients to show damages.

On February 2, 2023, Plaintiff's counsel sent a letter to the trial court explaining that he inadvertently filed an unsigned declaration, requesting leave to correct the defect, and filing a signed copy of the declaration. On February 6, 2023,

20

BCA filed its "Objections to Plaintiff's Response to Defendants' Motion for Summary Judgment and Alternative Motion to Continue" objecting that counsel's declaration was unsigned and arguing it was filed late.

## E. Trial Court's Rulings

On February 8, 2023, the trial court denied Marteny's Motion to Compel. The next day, the trial court signed an order granting BCA's Motion for Summary Judgment without specifying the reason. Marteny then filed "Plaintiff's Motion to Rule and for Clarification" complaining that the trial court's order did not contain a ruling on Plaintiff's objections to Defendants' summary judgment evidence. Marteny also contends the trial court's order did not state whether it considered Kassab's declaration. Marteny requests that the trial court enter an order ruling on his objections. The trial court later signed an Order denying Marteny's Motion to Rule and for Clarification. Marteny timely appealed.

## II. ISSUE ONE: LAW-OF-THE-CASE DOCTRINE

In his first issue, Marteny argues the law-of-the-case doctrine precludes summary judgment, because the facts and record are substantially the same as in the first summary judgment proceeding. BCA responds that the law-of-the-case doctrine does not apply since the record includes additional evidence.

21

## A. <u>Standard of Review and Applicable Law</u>

"The 'law of the case' doctrine provides that a decision of a court of last resort on a question of law will govern a case throughout its subsequent stages." *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006) (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). An intermediate appellate court's conclusion does not bar that court's reconsideration of the initial conclusion in a subsequent appeal. *See id.* "[T]he decision to revisit the conclusion is left to the discretion of the court under the particular circumstances of each case." *Id.* (citations omitted); *see Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). Said another way, the "application of the law of the case doctrine is discretionary[.]" *Briscoe*, 102 S.W.3d at 717; *Woods v. VanDevender*, 296 S.W.3d 275, 279 (Tex. App.—Beaumont 2009, pet. denied). The doctrine "will not apply if 'the later stage of litigation presents different parties, different issues, or more fully developed facts.'" *City of Mansfield v. Savering*, No. 02-19-00174-CV, 2020 WL 4006674, at *8 (Tex. App.—Fort Worth July 16, 2020, pet. denied) (mem. op.) (citing *Jackson*, 192 S.W.3d at 769); *Rodgers v. Comm'n on Law. Discipline*, 151 S.W.3d 602, 609 (Tex. App.—Fort Worth 2004, pet. denied)); *see also Hartman v. Walker*, No. 09-21-00084-CV, 2023 WL 5282443, at *5 (Tex. App.—Beaumont Aug. 17, 2023, no pet.) (mem. op.) (noting that because prior appeal and current appeal "[were] based on

22

different evidentiary records, we disagree . . . that the law-of-the-case doctrine applies to this appeal[]").

## B. <u>Analysis</u>

Although the case is once again before us on appeal of a traditional summary judgment that challenged the elements of duty and damages of Marteny's legal malpractice claim, the evidentiary record before us has expanded. The summary judgment record before us in *Marteny I* included no expert testimony or affidavits from BCA. *See Marteny I,* 2020 WL 5666567, at *2. Additionally, the summary judgment record in this proceeding contains extensive briefing filed in the MDL court regarding the moratorium and multiple MDL Orders, while the record in *Marteny I* contained only: (a) Marteny's letter terminating BCA; (b) Marteny's written discovery responses; (c) Marteny's original petition and request for disclosure; (d) MDL notice of filing of the economic and property damages settlement agreement; and (e) order and reasons "[As to the OPA Test Cases/Moratorium Claims]." *See id.*

Based on the expanded summary judgment evidentiary record before us, we conclude the law-of-the-case doctrine does not apply to preclude us from considering the propriety of the trial court's summary judgment for BCA. *See Jackson,* 192 S.W.3d at 769; *Hartman,* 2023 WL 5282443, at *5; *Savering,* 2020 WL 4006674, at *9; *Rodgers,* 151 S.W.3d at 609. We overrule issue one.

**III. ISSUE TWO: SUMMARY JUDGMENT AND EVIDENCE**

In issue two, Marteny complains that the trial court erred by granting traditional summary judgment based on lack of duty and damages. In subsidiary points, Marteny argues that to the extent it impacted the summary judgment motion, the trial court abused its discretion by: 1) declining to rule on his objections to BCA's summary judgment evidence; and 2) failing to grant leave to correct a form defect in a summary declaration.

## A. <u>Law and Standard of Review</u>

We review a trial court's grant of a traditional summary judgment de novo. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022) (citation omitted). The moving party has the burden to show with competent summary judgment evidence that no genuine issue of material fact exists, and it is entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c) (setting forth standard for traditional summary judgment); *Zive*, 644 S.W.3d at 173. On appeal, we review the summary judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *see also Zive*, 644 S.W.3d at 173 (citation omitted).

Summary judgment for a defendant is proper only if defendant negates at least one element of each of plaintiff's theories of recovery. *Sci. Spectrum, Inc. v.*

24

*Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *see also Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (citation omitted) ("A traditional summary judgment motion is properly granted where a defendant conclusively negates at least one essential element of a cause of action."). With a traditional motion for summary judgment, only if the movant meets their burden of conclusively negating an essential element of a cause of action does the burden shift to the nonmovant to present evidence raising a genuine issue of material fact. *See Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022) (citing *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018)) (other citations omitted); *see also* Tex. R. Civ. P. 166a(c). When a trial court grants summary judgment without specifying the basis, we affirm if any of the movant's theories has merit. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

This case involves Marteny's legal malpractice claim against BCA. A client asserting a legal malpractice claim must prove: (1) the lawyer owed him a duty; (2) the lawyer breached the duty; and (3) that breach proximately caused the client's damages. *See USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023); *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). As we explained in *Marteny I*, when a legal malpractice suit arises from prior litigation, a client must show he would have obtained a more favorable result in the underlying litigation if the attorney exercised the appropriate standard of care. *See Elizondo*,

25

415 S.W.3d at 263; *see also Rogers v. Zanetti*, 518 S.W.3d 394, 401 (Tex. 2017). This is the suit-within-a-suit analysis and is the traditional way plaintiffs prove legal malpractice claims. *See Rogers*, 518 S.W.3d at 401 (citation omitted); *see also Starwood Mgmt.*, 530 S.W.3d at 678. "Where the injury claimed does not depend on the merits of the underlying action, however, the case-within-a-case methodology does not apply." *Rogers*, 518 S.W.3d at 401 (citation omitted). When a plaintiff alleges negligent settlement in a legal malpractice case, the "suit within a suit" analysis is not required. *See Elizondo*, 415 S.W.3d at 270. Rather, in such cases, an alternative method that may be available to prove attorney-malpractice damages would be analyzing settlements made under comparable circumstances. *Id*.

The Texas Supreme Court has explained,

> While this alternative method is sometimes available, we conclude that such an analysis requires expert testimony. We have in the past noted that proof of attorney malpractice requires expert testimony, because establishing such negligence requires knowledge beyond that of most laypersons. The same is true of proof of damages under a theory that a settlement was inadequate.

*Id*. at 270.

To the extent it impacted the trial court granting BCA's summary judgment, in part, Marteny contends the trial court erred by declining to rule on his objection to BCA's summary judgment evidence, particularly Coon's affidavit. Marteny also argues the trial court erred by declining to grant leave to correct what he characterizes as "a form defect" in an affidavit.

26

A trial court's decision on whether to admit or exclude summary judgment evidence is reviewed for an abuse of discretion. *See Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009) (citation omitted) (discussing striking expert's affidavit who was not timely designated in context of no-evidence motion for summary judgment); *Antoine v. Am. Serv. Ins.,* No. 09-14-00235-CV, 2016 WL 422524, at *2 (Tex. App.—Beaumont Feb. 4, 2016, no pet.) (mem. op.) (citation omitted) (stating that "[w]e review a trial court's evidentiary rulings using an abuse-of-discretion standard[]" in the context of a summary judgment). A trial court abuses its discretion if it acts arbitrarily or unreasonably or if it acts without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Antoine*, 2016 WL 422524, at *2.

"The same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings," as do the rules of error preservation. *FieldTurf USA, Inc. v. Pleasant Grove Ind. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) (citation omitted); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163–64 (Tex. 2018) (citations omitted). A party complaining on appeal about form defects of summary judgment evidence must have timely objected and secured a ruling on the objection from the trial court or objected to the trial court's refusal to rule. *See FieldTurf USA*, 642 S.W.3d at 837 (citations omitted); *Seim*, 551

S.W.3d at 166; *see also* Tex. R. Civ. P. 33.1(a) (error preservation requirements), 166a(f) (providing that a form defect in summary judgment evidence is not "grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend"). For defects in form, absent both an objection and a ruling, the complained-of evidence remains part of the summary judgment record and should be considered by the appellate court when reviewing the trial court's judgment. *See FieldTurf USA*, 642 S.W.3d at 837; *Seim*, 551 S.W.3d at 166; *see also* Tex. R. App. P. 33.1(a). In contrast, when an affidavit contains substantive defects, such as being conclusory, those substantive defects can be complained of for the first time on appeal. *See Seim*, 551 S.W.3d at 166.

## B. Analysis

With these principles in mind, we first turn to Marteny's objections to BCA's summary-judgment evidence. In the trial court and on appeal, Marteny complains that Coon's affidavit should be struck because: (1) BCA failed to properly disclose Coon's opinions as an expert; and (2) Coon's affidavit is conclusory.

The trial court did not expressly rule on Marteny's written objections to Coon's affidavit nor is it clear from the record that it implicitly ruled. Marteny objected to the trial court's refusal to rule on his objections, thus preserving for review his complaint about expert disclosure. *See* Tex. R. App. P. 33.1(a)(2)(B). Marteny's complaint that Coon's affidavit is conclusory involves a substantive

28

defect that can be raised for the first time on appeal. *See Seim*, 551 S.W.3d at 166; *see also Yazdchi v. Unauthorized Prac. of Law Comm.*, No. 01-09-00065-CV, 2010 WL 2650563, at \*3 (Tex. App.—Houston [1st Dist.] July 1, 2010, no pet.) (mem. op.) (explaining that no ruling is required on a substantive defect that an affidavit is conclusory to raise the objection on appeal).

Marteny relies on Texas Rule of Civil Procedure Rule 193.6 to support his argument that Coon was not timely designated, and his affidavit should be stricken. *See* Tex. R. Civ. P. 193.6(a). That rule provides,

> A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified[.]

*Id.* The record before us reveals that in May 2018, BCA designated Coon, a named party, as both a fact and expert witness stating that he "[r]epresented thousands of clients affected by the BP Oil Spill." Marteny contends this designation was untimely and insufficient since it did not include the substance of Coon's opinions. Even so, Marteny sued Coon for legal malpractice, making Coon a "named party," which Rule 193.6(a) expressly excludes from its application. *See id.* On this record, the trial court did not act arbitrarily or unreasonably to the extent it refused to exclude Coon's affidavit because he was not timely disclosed as an expert witness, thus it

29

did not abuse its discretion. *See Gillenwater*, 285 S.W.3d at 881; *Downer*, 701 S.W.2d at 241–42; *Antoine*, 2016 WL 422524, at *2.

We now turn to Marteny's complaint that Coon's affidavit was conclusory. Coon's affidavit outlines his experience in toxic tort litigation and specifically in the "BP oil spill litigation." He claims that he represented thousands of clients in MDL-2179, which handled that litigation. Coon explains that Marteny's claims "were a direct result of the government imposed moratorium against offshore drilling after the spill." Coon explains that the OPA required BP to establish a claims process for oil spill victims, which was done by creating the GCCF. He also states that under the GCCF's "Final Rules Governing Payment Options, Eligibility and Substantiation Criteria, and Final Payment methodology, dated February 18, 2011, 'Claims related to the moratorium on deepwater drilling . . . are not eligible for compensation from the GCCF.'" Coon claims that given the nature of Marteny's claim, he was "ineligible for any payment."

Coon further asserts that the GCCF's determination "left the issue of compensability of Moratorium Claims to the courts," with BP and other defendants raising this issue in the MDL court through 12(B) motions to dismiss, with substantial briefing. This briefing is included in the summary judgment evidence and record. Coon explains that the MDL court did not initially rule on these motions to dismiss, rather moratoria claim compensability arose again in the context of the

30

Class Settlement. He also specifies the Class Settlement provision which expressly excluded "Moratoria Losses." He asserts, "Mr. Marteny's claim being a purely moratoria claim was excluded from the [C]lass [S]ettlement as were all other purely moratoria claims and neither he nor any other purely moratoria claimants were entitled to compensation."

Coon adds that since both the GCCF and the Class Settlement specifically excluded moratoria claims,

> the only remaining recourse was pursuit of them before the MDL Court for trial on the merits. The [MDL] Court proceeded with several "Bellwether" Moratoria cases, and upon conclusion of the cases on discovery, BP again moved for dis[miss]al on the grounds that the government action in imposing a temporary ban or moratoria on drilling activities in the Gulf of Mexico was an intervening act and not encompassed in the liabilities imposed on the BP pursuant to the Oil Pollution Act. The Court agreed, ruling that Moratorium were not eligible for payment under OPA on March 10, 2016[,]

and it entered an Order granting BP's Motion to Dismiss Moratoria/Pre-Moratoria Claims. Coon continues, opining,

> Hundreds of thousands of claims were filed against BP through the Oil Pollution Act presentment process, the Gulf Coast Claims Facility, the Economic and Property Class Action Settlement, and the MDL Trial Court. Moratoria based claims were expressly denied across the board in all of those proceedings, leaving exclusively moratoria based claims with no legal recourse and no cause of action.

Marteny argues that Coon's affidavit testimony is conclusory, and Coon asks the Court to "take his word for it." Marteny contends that Coon "fails to address the fact

31

that thousands of moratoria claims settled through the court-appointed neutral program."

Marteny asserts that Coon must compare Marteny's claims to other settling clients and explain how he was different. Although that is one acceptable method, we disagree it is the only acceptable method to negate damages in this case. *See Starwood Mgmt.*, 530 S.W.3d at 680 (rejecting interpretation of *Elizondo* and *Burrow* that would require expert affidavits to provide a factual analysis of the comparators on which the expert relies). *Elizondo v. Krist* recognized that an alternative method of establishing damages is "sometimes available" where negligent settlement is alleged, explaining that

> in a mass tort litigation involving thousands of similar claimants and arising out of the same event, the expert measures the 'true' settlement value of a particular case by persuasively comparing all the circumstances of the case to the settlements obtained in other cases with similar circumstances arising from the event.

*See* 415 S.W.3d at 263, 270. *Elizondo* involved an explosion at a BP plant. *See id.* at 260. In discussing the availability of the above-described comparable settlement analysis to prove damages, the Court noted that BP "made the decision to settle every case arising from the plant explosion[,] . . . and indeed made the business decision to settle all cases and not try any to verdict[.]" *Id.* at 263. Here, in the underlying litigation, BP settled many cases, but it successfully challenged whether it had to pay moratorium claims and the MDL court ruled it was not responsible for those claims.

32

This is significant, since unlike *Elizondo* where BP settled all claims, BP contested paying any moratorium claims like Marteny's.

Marteny also relies on *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999). In that case, the Texas Supreme Court reversed a traditional summary judgment for defendant attorneys, which it determined was based on conclusory affidavits. *See id.* at 232. We agree that *Burrow v. Arce* stands for the general proposition that an expert's bare opinions will not settle an issue as a matter of law, and "a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Id.* at 235. Even so, the Court clarified,

> [T]he issue is whether [the expert's] affidavit states a sufficient basis for his opinions. [The expert] might have analyzed the Clients' injuries by type, or related settlement amounts to medical reports and expenses, or compared these settlements to those of similar claims, or provided other information showing a relationship between the plaintiffs' circumstances and the amounts received. He did not do so. The absence of such information did not merely make the affidavit unclear or indirect; it deprived [the expert's] opinions of any demonstrable basis.

*Id.* at 236.

Thus, another permissible way to provide "a sufficient basis" for an expert's opinion negating damages was to analyze the "injuries by type[.]" *See id.* That is what Coon does in his affidavit in this case. He explains that Marteny had purely moratoria claims for loss of earning capacity. He then addresses the three avenues through which claimants received compensation: the GCCF; the Class Settlement; and the MDL court. Coon describes how all three excluded moratorium related

33

claims, culminating in the MDL court's determination that (1) the government moratorium constituted an intervening cause, (2) those claims were not compensable, and (3) granting BP's motions to dismiss the moratorium claims in the "Bellwether" cases. In doing so, Coon's expert testimony explains the "how and why" by analyzing Marteny's injuries by type. *See Starwood Mgmt.*, 530 S.W.3d at 679 (explaining that to avoid being conclusory, the affidavit must explain "how and why"); *Burrow*, 997 S.W.2d at 236. Accordingly, Coon's affidavit provides a sufficient basis for his opinion and is not conclusory. *See Starwood Mgmt.*, 530 S.W.3d at 679; *Burrow*, 997 S.W.2d at 236. We conclude that BCA met its traditional summary judgment burden of negating damages with expert testimony by showing that moratoria related claims like Marteny's were non-compensable as a matter of law. *See* Tex. R. Civ. P. 166a(c).

The burden then shifted to Marteny to present some evidence creating a genuine issue of material fact on damages, which required expert testimony. *See id.*; *Wallace*, 642 S.W.3d at 514; *Lujan*, 555 S.W.3d at 84; *Elizondo*, 415 S.W.3d at 270–71. Marteny asserts that he cannot present contrary evidence without settlement information from BCA's other clients and Marteny points to the fact that court-appointed neutrals settled thousands of moratoria related claims. He cites our opinion in *Marteny I* for this proposition. *See Marteny I*, 2020 WL 5666567, at *5. As we have already explained, in *Marteny I*, we did not have the benefit of any expert

34

testimony analyzing the type of Marteny's claim, explaining the exclusion of purely moratorium claims from the GCCF and Class Settlement, or the ultimate judicial determination that such claims were non-compensable. *See id.*, at *6. ("BCA failed to provide *any* expert testimony on the damages element, by affidavit or otherwise."). Since BCA's expert testimony now before us explains this in detail, the burden shifted to Marteny to establish by expert testimony that BCA's conduct resulted in malpractice damages. *See* Tex. R. Civ. P. 166a(c); *Elizondo*, 415 S.W.3d at 270–71 (explaining what evidence plaintiff could have presented to create a fact issue and that expert testimony was required).

As discussed more fully above, we disagree that the law-of-the-case doctrine applies to this appeal because the prior appeal and this current appeal are based upon substantially different records. *Hartman*, 2023 WL 5282443, at *5. For example, here, the prior appeal involved five evidentiary records; whereas the current appeal contains forty evidentiary records. Likewise, to the extent that Marteny asserts *Marteny I* held that BCA could only negate damages with settlement information, we disagree with that interpretation. To the contrary, Marteny's attempt to establish damages with settlement information from BCA's other clients is now misplaced, given the expert testimony presented and additional evidence submitted to establish that purely moratorium claims have now been excluded from the GCCF, the Class Settlement, and the MDL Court has made a determination that such claims were non-

35

compensable. In other words, Coon describes how all three avenues excluded moratorium related claims, culminating in the MDL court's (1) determination that the government moratorium constituted an intervening cause and that moratorium claims were not compensable, and (2) granting BP's motions to dismiss the moratorium claims in the "Bellwether" cases. Therefore, Coon's expert testimony explains the "how and why" Marteny is not entitled to any damages as a matter of law by analyzing the type of Marteny's injuries.

We have also reviewed the evidence Marteny provided with his response to the summary judgment motion. Like the *Elizondo* plaintiffs, Marteny failed to raise a material issue of fact on malpractice damages. *See Elizondo*, 415 S.W.3d at 270. Reading Marteny's response and attachments we conclude Marteny offered proof, including his affidavit and other evidence, that (1) BCA represented him in his claims against BP for loss of earning capacity, (2) he withdrew his termination letter and BCA agreed to continue representing him under their original agreement, (3) he received no compensation, (4) BCA failed to sue on his behalf, and (5) court appointed neutrals settled other claims with moratorium components. However, he failed to establish through expert testimony that BP would have paid to settle his moratorium claims despite a judicial determination it was not liable for such claims. *See id.* at 271 (explaining what plaintiff would have to prove to establish damages based on her theory). To conclude otherwise would foster the pursuit of otherwise

36

frivolous claims. While having an expert compare settlement information of other BCA clients may be one way to do this, it is not the only way. *See Burrow*, 997 S.W.2d at 236. Marteny could have provided a controverting expert affidavit explaining why his claims were not purely moratoria related or explaining why his type of claim was entitled to a settlement despite a judicial determination that such claims were non-compensable. He asserts that neutrals settled thousands of other moratoria related claims, but he does not attempt to explain with expert testimony "how and why" he would have qualified for such a settlement. *See Starwood Mgmt.*, 530 S.W.3d at 679; *Elizondo*, 415 S.W.3d at 271.

In its Second Motion for Summary Judgment, BCA met its initial burden to conclusively negate damages in this legal malpractice claim. *See* Tex. R. Civ. P. 166a(c); *Wallace*, 642 S.W.3d at 514; *Lujan*, 555 S.W.3d at 84. Once the burden shifted to Marteny, he failed to provide expert testimony controverting BCA's evidence and creating a fact issue on damages. *See* Tex. R. Civ. P. 166a(c); *Wallace*, 642 S.W.3d at 514 (addressing shifting burden); *Lujan*, 555 S.W.3d at 84 (same); *see also Elizondo*, 415 S.W.3d at 270–71 (requiring expert testimony in legal malpractice case). Since BCA negated the damages element of Marteny's legal malpractice claim, we need not address the argument that BCA failed to negate the duty element. *See* Tex. R. App. P. 47.1; *Henkel*, 441 S.W.3d at 251; *Sci. Spectrum*, 941 S.W.2d at 911. We overrule issue two.

37

## IV. ISSUE THREE: MOTION TO COMPEL

In issue three, Marteny contends the trial court abused its discretion by denying his Motion to Compel discovery. BCA responds that Plaintiffs' Third Set of Written Discovery is identical to questions asked in earlier discovery and argues this Court found the definition of "similar clients" in the previous requests to be overbroad. BCA further argues that Marteny's definition of "similar clients" in the Third Set of Written Discovery does not "narrow that definition substantially."

## A. **Standard of Review and Applicable Law**

We review a trial court's ruling on a motion to compel discovery for an abuse of discretion. *See Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995); *Stewart v. Lexicon Genetics, Inc.*, 279 S.W.3d 364, 373 (Tex. App.—Beaumont 2009, pet. denied). When reviewing for an abuse of discretion, we determine whether the trial court's action "was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law[ ]" or if it was made without reference to guiding rules or principles, and we will not substitute our judgment for the trial court's. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002); *Suniverse, LLC v. Universal Am. Mortg. Co.*, 09-19-00090-CV, 2021 WL 632603, at *8 (Tex. App.—Feb. 18, 2021, pet. denied) (mem. op.) (citations omitted).

An objection to written discovery not made within the required time is waived "unless the court excuses the waiver for good cause shown." Tex. R. Civ. P. 193.2(e). A trial court has broad discretion to permit or deny the withdrawal of deemed admissions but cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles. *Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011) (per curiam); *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) (per curiam); *Plaza City, LLC v. AES Septic, LLC*, No. 09-21-00030-CV, 2022 WL 17350935, at *4 (Tex. App.—Beaumont Dec. 1, 2022, no pet.) (mem. op.).

When a party is served with requests for admissions and fails to respond, each request is deemed admitted by operation of law. *See* Tex. R. Civ. P. 198.2(c). "A matter admitted under this rule is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." *Id.* at 198.3. A trial court may allow the withdrawal or amendment of an admission if (1) a party shows good cause, and (2) the trial court finds that the parties relying on the deemed admissions will not be unduly prejudiced and presentation of the action's merits will be subserved by allowing the amendment or withdrawal of the admission. *See id.* A party may establish good cause by showing its failure to respond was accidental or a mistake, rather than intentional or the result of conscious indifference. *Wheeler*, 157 S.W.3d at 442; *Plaza City*, 2022 WL 17350935, at *4. "To establish a lack of undue prejudice, a party must show 'that

39

withdrawing the admission will not delay the trial or significantly hamper the opposing party's ability to prepare for it.'" *Plaza City*, 2022 WL 17350935, at \*4 (citing *Wheeler*, 157 S.W.3d at 442) (other citation omitted).

"The burden to propound discovery complying with the rules of discovery should be on the party propounding the discovery, and not on the courts to redraft overly broad discovery[.]" *In re TIG, Ins.,* 172 S.W.3d 160, 168 (Tex. App.—Beaumont 2005, orig. proceeding). As we explained in *Marteny II*,

> Marteny's claims were solely for moratorium damages; however, the discovery requests required BCA to produce information not only for moratorium damage claims, but also for oil spill damage claims. Faced with a facially overbroad request for discovery, the trial court had the discretion to narrowly tailor the request or to deny the motion to compel.

*See* 2022 WL 318448, at \*3; *see also In re Mallinckrodt, Inc.*, 262 S.W.3d 469, 474 (Tex. App.—Beaumont 2008, orig. proceeding).

## B. <u>Analysis</u>

Although Marteny disputes the characterization of his claims being moratorium only, a review of his live pleading confirms this to be so. Specifically, he pleaded that he

> made a living by working on offshore vessels charted by oil companies since 2005. Following the oil spill, an extensive moratorium was placed on all offshore drilling vessels, drastically decreasing the amount of work available on vessels in the Gulf of Mexico. The moratorium resulted in Marteny being discharged from his current assignment and, due to damage caused by the oil spill, finding another assignment was virtually impossible as the demand for merchant mariners drastically

40

decreased. Due to the low demand for merchant mariners and an excess supply of merchant mariners, the wages and benefits offered to those in his field went down. More specifically, the moratorium caused Maritime companies who support the oil field industry to lose business and those companies in turn laid off hundreds of merchant mariners saturating the market.

Marteny pleads he lost his job because of the moratorium and given the saturation of the market with merchant mariners and decreased demand due to the drilling moratorium, he could not find another job.

The record establishes that following this Court's denial of his petition for writ of mandamus, Marteny sent additional discovery and changed the definition of "similar clients." This was something BCA complained about in the trial court and argues on appeal. The record reveals that Marteny's revised definition of "similar clients" limited the requests to those clients with "occupations similar to Marteny's." Nevertheless, an important consideration to our conclusion in *Marteny II* in determining the requests were facially overbroad was that Marteny's claims were for moratorium damages only, and the discovery requests were not limited to those claims. *See Marteny II*, 2022 WL 318448, at *3. As worded, Marteny's revised definition of "similar clients" requests information about BCA clients who "claimed to suffer economic losses as a result of the oil spill or the moratorium" but he again fails to limit it to clients who *only* had moratorium claims. As worded, this could include individuals with moratorium claims who also had other claims resulting from the spill. Since the trial court could reasonably conclude Marteny again failed

41

to narrowly tailor his requests, it did not abuse its discretion when it denied Marteny's Motion to Compel. *Mallinckrodt, Inc.*, 262 S.W.3d at 474; *TIG, Ins.*, 172 S.W.3d at 168; *see also Marteny II*, 2022 WL 318448, at *3.

As to the tardiness of BCA's response and Marteny's assertion that this resulted in a waiver of objections and deemed admissions, we note that BCA offered to have Newell testify at the hearing, but the trial court instead asked BCA to submit an affidavit from Newell regarding the delay in responding to the discovery. The trial court also allowed Marteny to respond after Newell provided an affidavit. Newell ultimately submitted two affidavits, and Marteny complains about both. In his first affidavit, Newell asserts,

> The responsibility for handling the cases is divided between BCA's Beaumont and Houston office. Generally, this case would have been handled by the Beaumont office. However, the case was calendared and converted to Word by the Houston office in mid-June. This apparently created some confusion about who was going to finalize and answer the discovery. I was not aware the discovery did not get answered within 30 days.

Newell further claims that failing to respond "was accidental and the result of a mistake, and not intentional or the result of conscious indifference." *See Wheeler*, 157 S.W.3d at 442; *Plaza City*, 2022 WL 17350935, at *4. He explains how the calendaring confusion occurred. Thus, based on this affidavit, the trial court could have reasonably determined BCA established good cause. *See Wheeler*, 157 S.W.3d at 442; *Plaza City*, 2022 WL 17350935, at *4.

42

As explained above, the trial court could have reasonably concluded that Marteny failed to narrowly tailor his requests sufficiently after we denied his petition for writ of mandamus in *Marteny II*. *See* 2022 WL 318448, at *3. Since BCA showed that Marteny failed to limit the information sought after his petition for writ of mandamus was denied to "moratorium only" claims like his, the trial court could have also reasonably determined that withdrawing the deemed admissions would not delay or significantly hamper Marteny's ability to prepare for trial, particularly without a trial setting, thus there was no undue prejudice. *See Wheeler*, 157 S.W.3d at 442; *Plaza City*, 2022 WL 17350935, at *4.

On this record, we conclude the trial court did not abuse its discretion in denying Marteny's Motion to Compel. *See Hall*, 909 S.W.2d at 492; *Suniverse, LLC*, 2021 WL 632603, at *8; *Stewart*, 279 S.W.3d at 373. We overrule issue three.

## V. ISSUE FOUR: MOTION TO CONTINUE

In issue four, Marteny argues the trial court abused its discretion by implicitly denying his motion to continue the summary judgment hearing to obtain the discovery. In connection with this, Marteny argues that the trial court abused its discretion by refusing to grant leave for him to late file a signed affidavit in support of his motion for continuance.

## A. Standard of Review and Applicable Law

We review a trial court's decision to deny a motion to continue a summary judgment hearing for an abuse of discretion. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *Suniverse*, 2021 WL 632603, at *8. A court should consider the following nonexclusive factors deciding whether the trial court abused its discretion in denying a motion for continuance seeking more time to conduct discovery: (1) the time the case has been on file; (2) the materiality and purpose of the discovery sought; and (3) whether the party seeking the continuance exercised due diligence to obtain the requested discovery. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161; *Suniverse*, 2021 WL 632603, at *8.

## B. Analysis

Even assuming without deciding that the trial court considered Kassab's late-filed affidavit in support of the Motion for Continuance, it did not abuse its discretion by denying the Motion for Continuance. We look first to how long this case has been on file, which is over seven years. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161; *Suniverse*, 2021 WL 632603, at *8. This factor weighs against continuing the hearing. Next, we look at the materiality and purpose of the discovery sought. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161; *Suniverse*, 2021 WL 632603, at *8. The purpose of the settlement information sought by Marteny of other similarly situated BCA clients is his attempt to prove damages in this legal

44

malpractice case alleging negligent settlement, so its materiality may be significant to him, which factor could favor a continuance. However, as we explained in Issue Two above, this was not the only avenue to prove damages. We conclude that Marteny's attempt to establish damages with settlement information is misplaced because the moratorium claims have now been excluded from the GCCF and the Class Settlement, and the MDL Court has made a judicial determination that such claims are non-compensable. So, this also weighs against granting a continuance.

We next look to the diligence used in procuring discovery. We agree that Marteny exercised diligence in propounding discovery. *See Two Thirty Nine Joint Venture*, 145 S.W.3d at 161; *Suniverse*, 2021 WL 632603, at *8. That said, Marteny failed to narrowly tailor the discovery to request settlement information on moratoria only claims following the denial of his petition for writ of mandamus. On this record, the trial court could have determined that although the discovery may have been timely filed, the fact that Marteny failed to narrowly tailor his requests after being afforded an opportunity and given how long this case has been on file, a continuance was unwarranted.

We conclude that the trial court's denial of the continuance was not arbitrary or unreasonable, thus it did not constitute an abuse of discretion. *See Two Thirty Nine Joint Venture,* 145 S.W.3d at 161; *Suniverse*, 2021 WL 632603, at *8. We overrule issue four.

45

# VI. CONCLUSION

Having overruled Marteny's issues, we affirm the trial court's judgment.

AFFRIMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on October 17, 2024
Opinion Delivered November 21, 2024

Before Golemon, C.J., Johnson and Wright, JJ.